UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, et al., | : : : : |
| Plaintiffs, | : : |
| v. | : Case No. 03-2006 (EGS) : JUDGE: Emmet G. Sullivan |
| RINGLING BROS. AND BARNUM & BAILEY CIRCUS, et al., | : : : |
| Defendants. | : : |

**ANSWER**

Defendants Ringling Bros. and Barnum & Bailey Circus ("Ringling Bros.") and Feld Entertainment, Inc. ("Feld") (together, "Defendants") answer the separately numbered paragraphs of the Complaint as follows:

1. Defendants admit that Plaintiffs purport to bring this suit under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, and deny the remaining allegations in paragraph 1.

2. Defendants deny that this Court has jurisdiction over this case.

3. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3.

4. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4.

5. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5.

6. Defendants deny the allegations in paragraph 6.

7. Paragraph 7 contains a legal conclusion to which no response is required; however, to the extent a response is required, Defendants deny the allegations in paragraph 7.

8. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8.

9. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9.

10. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10.

11. Defendants deny the allegations in paragraph 11.

12. Paragraph 12 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants deny the allegations in paragraph 12.

13. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13.

14. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15.

16. Defendants deny the allegations in paragraph 16.

17. Paragraph 17 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants deny the allegations in paragraph 17.

18. Defendants admit that Thomas Rider formerly worked for Ringling Bros. from June 1997 until approximately November 1999. Defendants deny the remaining allegations in the first sentence and the allegations in the second and third sentences of paragraph 18.

19. Defendants deny the allegations in paragraph 19.

20. Defendants deny the allegations in paragraph 20 except that Defendants are without knowledge or information sufficient to form a belief as to the way in which Mr. Rider refers to any elephants.

21. Defendants deny the allegations in paragraph 21.

22. Defendants deny the allegations in paragraph 22.

23. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23, except that Defendants deny that any of their elephants are "sad and beaten down, devoid of their spirits, and extremely stressed," that they "exhibit stereotypic behavior, such as swaying back and forth," or that they are otherwise "mistreated" and deny that Rider has suffered any injury.

24. Paragraph 24 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants deny the allegations in paragraph 24.

25. Defendants admit that Feld is a Delaware corporation with its principal place of business in Virginia. Defendants deny the remaining allegations in paragraph 25 and aver that Feld conducts business under the name Ringling Bros. and Barnum & Bailey Circus.

26. Defendants deny the allegations in the first sentence of paragraph 26. The second sentence of paragraph 26 contains a definition of terms to which no response is required, except that Defendants deny that they are liable solely on the basis of acts of their employees.

27. Defendants admit that Ringling Bros. has performed in Washington, D.C., that it advertises those performances in the District of Columbia, that residents of the District of Columbia have attended those shows, and that Defendants have received revenue from those performances.

28. Defendants admit that they have rented and performed in both the D.C. Armory and the MCI Center and that they have sold tickets and concessions for Ringling Bros.' performances at those locations.

29. Defendants admit that Ringling Bros. has held parades in Washington, D.C., and that those parades have included elephants; however, Defendants deny the remaining allegations in the first sentence of paragraph 29. Defendants further admit that Ringling Bros. has participated in other local events in the District of Columbia, including events at the National Zoo.

30. Defendants admit that Ringling Bros. has advertised its shows in Washington, D.C.

31. Defendants admit the allegations in paragraph 31.

32. Defendants admit the allegations in paragraph 32.

33. Defendants admit that Ringling Bros. has hosted citizenship ceremonies in Washington, D.C.

34. Defendants admit that they obtain permits from the United States Department of Agriculture's ("USDA") regional office in Raleigh, North Carolina, and that the USDA's headquarters is in Washington, D.C. Defendants deny the remaining allegations in paragraph 34 and state that they obtain permits from and make periodic reports to the Fish and Wildlife Service's headquarters in Arlington, Virginia.

35. Defendants admit the allegations in paragraph 35.

36. Paragraph 36 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the statutory provisions referenced in paragraph 36 speak for themselves.

37. Paragraph 37 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the statutory provisions referenced in paragraph 37 speak for themselves.

38. Paragraph 38 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the statutory provisions referenced in paragraph 38 speak for themselves.

39. Paragraph 39 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the statutory and regulatory provisions referenced in paragraph 39 speak for themselves.

40. Paragraph 40 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants state that the statutory provision referenced in paragraph 40 speaks for itself.

41. Paragraph 41 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants state that the statutory provision referenced in paragraph 41 speaks for itself.

42. Paragraph 42 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants state that the statutory provision referenced in paragraph 42 speaks for itself.

43. Paragraph 43 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the statutory provisions referenced in paragraph 43 speak for themselves.

44. Paragraph 44 contains a legal conclusion to which no response is required; however, to the extent a response is required Defendants state that the statutory provision referenced in paragraph 44 speaks for itself.

45. Paragraph 45 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the statutory and regulatory provisions referenced in paragraph 45 speak for themselves.

46. Paragraph 46 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the regulatory provisions referenced in paragraph 46 speak for themselves.

47. Paragraph 47 contains legal conclusions to which no response is required; however, to the extent a response is required Defendants state that the regulatory provisions referenced in paragraph 47 speak for themselves.

48. Defendants admit the allegations in paragraph 48.

49. Defendants deny the allegations in paragraph 49.

50. Defendants deny the allegations in paragraph 50.

51. Defendants deny the allegations in paragraph 51.

52. Defendants deny the allegations in paragraph 52.

53. Defendants deny the allegations in paragraph 53.

54. Defendants deny the allegations in paragraph 54.

55. Defendants admit that Ringling Bros. presents Asian elephants in its performances in Washington, D.C., in other locations around the country, and, from time to time, in other countries.

56. Defendants admit that the U.S. Fish and Wildlife Service ("FWS") has issued Ringling Bros. permits; however, Defendants deny that the permits address the activities listed in the allegations in paragraph 56.

57. Defendants deny the allegations in paragraph 57, including any implication that Ringling Bros. "beat[s]" its elephants.

58. Defendants deny the allegations in paragraph 58, including any implication that Ringling Bros. uses "sharp bull hooks on its elephants for the purpose of training or punishing them."

59. Defendants deny the allegations in paragraph 59, including any implication that Ringling Bros. "forcibly remove[s] baby elephants from their mothers with the use of ropes and chains."

60. Defendants deny the allegations in paragraph 60, including any implication that Ringling Bros. "inflict[s] wounds on its elephants for the purpose of training them, punishing them, or keeping them under control."

61. Defendants deny the allegations in paragraph 61, including any implication that Ringling Bros. "keep[s] its elephants in chains for up to 20 hours a day, and sometimes longer."

62. Defendants deny the allegations in paragraph 62.

63. Defendants deny the allegations in paragraph 63.

64. Defendants deny the allegations in paragraph 64.

65. Defendants deny the allegations in paragraph 65.

66. Defendants deny the allegations in paragraph 66.

67. Defendants deny the allegations in paragraph 67.

68. Defendants deny the allegations in paragraph 68.

69. Defendants deny the allegations in paragraph 69.

70. Defendants admit that an elephant named Benjamin died in July 1999 while swimming in a pond when he was approximately 4 years old. Defendants admit that, in a document titled "Report of Investigation," a USDA inspector incorrectly speculated that seeing and/or being touched with an ankus may have created stress and/or trauma that allegedly contributed to Benjamin's drowning. Defendants deny the accuracy of that conclusion, deny any suggestion of wrongdoing or liability based on the allegations in either the Report of Investigation or paragraph 70, and state that the USDA ultimately concluded that there was no violation in relation to Benjamin's death and therefore closed its investigation.

71. Defendants deny the allegations in paragraph 71.

72. Defendants admit that an elephant named Kenny died in January 1998 when he was 3 1/2 years old. Defendants deny the remaining allegations in paragraph 72.

73. Defendants deny the allegations in paragraph 73 and state that an internal USDA e-mail acknowledged that the veterinarian's subsequent sworn statements indicated that he would have deferred to the judgment of the trainers.

74. Defendants deny the allegations in paragraph 74.

75. Defendants deny the allegations in paragraph 75.

76. Defendants deny the allegations in paragraph 76.

77. Defendants deny the allegations in paragraph 77.

78. Defendants deny the allegations in paragraph 78.

79. Defendants deny the allegations in paragraph 79.

80. Defendants admit that inspectors for the U.S. Department of Agriculture ("USDA") observed markings on the rear legs of two juvenile elephants, Doc and Angelica, which they incorrectly concluded were lesions and that the inspectors mistakenly described one "lesion" on Angelica as being "approx. 6" long x 1" wide." Defendants deny any suggestion of wrongdoing or liability based on the allegations in paragraph 80.

81. Defendants admit that USDA inspectors mistakenly claimed that two Ringling Bros. employees told the inspectors that the "lesions" were caused by rope burns resulting from the separation process. Defendants deny the accuracy of those statements and further deny any suggestion of wrongdoing or liability based on the allegations in paragraph 81.

82. Defendants admit that USDA inspectors mistakenly claimed that they were told that Doc and Angelica were weaned from their mothers in January 1999 through the use of rope and chains, but Defendants deny the accuracy of those statements. Defendants further deny any suggestion of wrongdoing or liability based on the allegations in paragraph 82.

83. Defendants admit the allegations in the first sentence and deny the allegations in the second sentence of paragraph 83.

84. Defendants admit that the USDA mistakenly informed Ringling Bros. that some of its practices may cause "unnecessary trauma, behavioral stress, physical harm and discomfort" to its elephants. However, Defendants deny the accuracy of the USDA's conclusion and aver that the USDA has acknowledged that Ringling Bros.' procedures conform to those recommended by elephant experts.

85. Defendants deny the allegations in paragraph 85, and they further deny any implication that Ringling Bros. has "beaten, forcibly removed from their mothers, hit with bull hooks, and confined for long periods of time," "physically, psychologically, [or] socially injured," or caused any "negative impacts on the behavior and demeanor" of any of its elephants.

86. Defendants deny the allegations in paragraph 86, and they further deny any implication that Ringling Bros. "significantly disrupts [the] normal behavioral patterns" of baby elephants or their "relationships with their mothers and other members of their family unit" or that it causes any negative impact on any elephants' "behavior and demeanor."

87. Defendants admit the allegations in paragraph 87.

88.     Defendants deny the allegations in paragraph 88, and they further deny any implication that they forcibly remove baby elephants from their mothers or that that they cause any elephant "severe emotional and psychological injury."

89.     Defendants deny the allegations in paragraph 89, and they further deny any implication that they disrupt any elephant's "normal behavioral patterns," including their "relationships with their offspring, their production of milk, and their reproductive cycles."

90.     Defendants deny the allegations in paragraph 90.

91.     Defendants deny the allegations in paragraph 91.

92.     Defendants admit that they received letters dated December 21, 1998, and November 15, 1999, which were sent on behalf of the Performing Animal Welfare Society ("PAWS"), Pat Derby, and Ed Stewart and admit that those letters purported to give notice of intent to sue under the ESA. Defendants further admit that those letters state that copies were sent to Bruce Babbit and Jamie Rappaport Clark, but lack knowledge or information sufficient to form a belief as to whether such copies were, in fact, sent. Defendants deny the remaining allegations in paragraph 92 and further deny the truth of, and any liability on the basis of, the allegations in the December 21, 1998, or the November 15, 1999, letters.

93.     Defendants admit that, on July 11, 2000, PAWS, Derby, Stewart, ASPCA, FFA, AWI, and Rider filed a complaint against Defendants in which they alleged that Defendants were violating the ESA; however, Defendants deny any liability on the basis of the allegations in that complaint or any amended complaints in that action.

94.     Defendants admit that PAWS, Derby, and Stewart withdrew from the prior lawsuit with prejudice and that their withdrawal was in conjunction with the resolution of a separate case.  Defendants deny the remaining allegations in paragraph 94 and state that the terms of their settlement with PAWS, Derby, and Stewart are confidential.  Defendants further state that, although counsel for the current plaintiffs filed a pleading stating that PAWS, Derby, and Stewart were withdrawing from the prior lawsuit, PAWS, Derby, and Stewart, subsequently clarified the terms of their withdrawal through separate counsel.

95.     Defendants admit that they received a letter dated April 12, 2001, from ASCPA, FFA, AWI, and Rider, that the notice letter referred to and purported to incorporate by reference the December 21, 1998, and November 15, 1999, letters, and that a copy was sent to Defendants' counsel.  Defendants further admit that the April 12, 2001, notice letter shows copies being sent to the Secretary of the Department of the Interior and the Acting Director of the Fish and Wildlife Service, but Defendants are without knowledge or information sufficient to form a belief as to whether such copies were, in fact, sent.  Defendants deny the remaining allegations in paragraph 95 and further deny the truth of, and any liability on the basis of, the allegations in the December 21, 1998, November 15, 1999, and April 12, 2001, letters.

96.     Defendants deny the allegations in paragraph 96.

97.     Defendants deny the allegations in paragraph 97.

**First Affirmative Defense**

Plaintiffs have failed to state a claim on which relief can be granted.

### Second Affirmative Defense

There is no "case or controversy" under Article III of the Constitution because Plaintiffs do not have standing to pursue this action.

### Third Affirmative Defense

Plaintiffs lack standing under the Endangered Species Act, 16 U.S.C. § 1631 *et seq*.

### Fourth Affirmative Defense

This Court does not have subject matter jurisdiction over plaintiffs' allegations.

### Fifth Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations.

### Sixth Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

### Seventh Affirmative Defense

Plaintiffs may not challenge the validity or administrative interpretation of regulations issued by the Department of the Interior in this action against Defendants.

### Eighth Affirmative Defense

This Court does not have jurisdiction over plaintiffs' allegations exceeding the scope of the allegations in the "right-to-sue" letter referenced in paragraph 95 of the Complaint.

### PRAYER FOR RELIEF

WHEREFORE, Defendants request that the Court:

(1) Dismiss this action with prejudice;

(2) Award Defendants costs and attorneys' fees; and

(3) Grant such further relief as it deems proper.

Respectfully Submitted

/s/ Eugene D. Gulland
Harris Weinstein (DC Bar No. 032268)
Eugene D. Gulland (DC Bar No. 175422)
Jeannie Perron (DC Bar No. 456099)

COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-6000

ATTORNEYS FOR DEFENDANTS

October 8, 2003

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Answer was served via first class mail, postage prepaid, this __ day of August, 2003, upon the following:

>Katherine A. Meyer
>Eric R. Gitzenstein
>Daniel R. Vice
>Meyer & Glitzenstein
>1601 Connecticut Ave, N.W., Suite 700
>Washington, D.C. 20009


_____
Joshua Wolson