UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,** *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>**RINGLING BROTHERS AND BARNUM & BAILEY CIRCUS,** *et al.,*<br><br>    Defendants. | Civil Action No. 03-2006  (EGS/JMF) |

**MEMORANDUM OPINION**

This case was referred to me for resolution of all unresolved issues raised in Plaintiffs' Motion to Compel Defendants' Compliance with Plaintiffs' Discovery Requests ("Mot. to Compel") as stated in the parties' Joint Status Report Concerning Discovery ("Jt. Status Report") filed on September 23, 2005.  For the reasons stated herein, the remaining issues in plaintiffs' motion will be granted in part and denied in part.

**I.    BACKGROUND**

The American Society for the Prevention of Cruelty to Animals, the Animal Welfare Institute, the Fund for Animals, and Tom Rider (collectively "plaintiffs") brought this lawsuit against Ringling Brothers and Barnum & Bailey Circus and Feld Entertainment, Inc., (collectively "defendants") alleging that defendants violated the Endangered Species Act ("ESA"), 16 U.S. C. § 1531 *et seq.*, by harming, harassing, and wounding endangered Asian

elephants. Compl. ("Compl.") at ¶ 1.

On January 25, 2005, plaintiffs filed a motion to compel defendants to comply with their discovery requests. Most of the numerous issues raised in plaintiffs' motion have since been resolved by either Judge Sullivan or by the parties themselves. There are, however, four remaining issues, specifically: (1) whether defendants must produce additional documents concerning plaintiff Tom Rider; (2) whether documents concerning the circus's and a corporate affiliate's profitability, public relations efforts, and advertising are discoverable; (3) whether defendants must produce information and documents from 1994 and 1995; and (4) whether certain documents collected by defendants' counsel must be produced. Jt. Status Report at 4-7. These issues have been referred to me for resolution.[1]

## II.    DISCUSSION

### A.    Documents Concerning Tom Rider

Plaintiffs requested all documents "that in any way concern or relate to Tom Rider." Mot. to Compel at 17. Tom Rider was previously employed by Ringling Brothers and Barnum & Baily Circus as an elephant handler and to work in the barns. Compl. at ¶ 18. Defendants contend that they have already produced all documents concerning Rider that were maintained in defendants' files and that the only documents that have not been produced are documents generated or obtained by defendants' counsel for the purpose of cross-examining and impeaching Rider. Jt. Status Report at 5. Defendants argue that the documents not produced are (1) non-

---

[1] A fifth issue, regarding the production of elephant medical records, was also referred to me. Specifically, defendants were refusing to produce elephant medical records until the Court had resolved their motion for a protective order. That issue, however, appears to have since been resolved. Judge Sullivan issued an order approving and entering a protective order regarding elephant medical records on September 26, 2005.

responsive to plaintiffs' request because they are not in defendants' possession, custody, or control, and (2) protected attorney work product. Id.  Plaintiffs contend that the documents not produced are in defendants' *control*, that any work product protection has been waived, and, therefore, the documents must be produced. Id. at 5-6.  Plaintiffs also contend that additional documents were generated in connection with Rider's employment, such as a background check and narratives relating to various disciplinary warnings, but that defendants have not produced them. Id.

      Rule 34 of the Federal Rules of Civil Procedure permits any party to request the production of documents within the scope of Rule 26(b) and in the "possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a).  Control includes documents that a party has the legal right to obtain on demand. Alexander v. FBI, 196 F.R.D. 299, 301 (D.D.C. 2000); Tavoulareas v. Piro, 93 F.R.D. 11, 20 (D.D.C. 1981).  Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control. See, e.g., Poole ex rel. Elliot v. Textron, Inc., 192 F.R.D. 494, 501 (D. Md. 2000); Poppino v. Jones Store Co., 1 F.R.D. 215, 219 (W.D. Mo. 1940) ("It is quite true that if an attorney for a party comes into possession of a document *as attorney for that party* his possession of the document is the possession of the party.").  Plaintiffs argue that the documents gathered by defendants' counsel for the purpose of cross-examining Rider are in defendants' "control" and, therefore, must be produced. Mot. to Compel at 18.  Defendants argue that the documents at issue are not within their control because such documents are work product and the work product privilege belongs to the attorney as well as the client. Memorandum in Opposition to Plaintiffs'

<u>Motion to Compel Defendants' Compliance with Plaintiffs' Discovery Requests</u> ("Defs. Opp'n") at 23. Because defendants have the legal right and the ready ability to access documents generated and collected by their attorneys in the course of this litigation, I find that the documents are within defendants' control for Rule 34 purposes. Accordingly, defendants cannot object to the production of documents assembled by their counsel to impeach Rider on the ground that they were not in defendants' control.

I do, however, find that the documents gathered by defendants' counsel for impeachment constitute traditional work product. <u>See</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 510-11 (1947).[2] The issue then becomes whether defendants, as plaintiffs argue, waived work product protection by not asserting the privilege sooner and not including the documents on their privilege log. Rule 34 requires a party who objects to a document request to state the "reasons for the objection." Fed. R. Civ. P. 34(b). If the party withholds "otherwise discoverable" documents "by claiming that it is privileged or subject to protection as trial preparation materials, the party shall make the claim expressly and shall describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the

---

[2] The documents at issue in this case were described by defendants as publicly available documents that were never in defendants' actual possession and gathered for the purpose of impeaching Rider. If the documents had been provided to counsel by defendants, the determination of whether they constitute work product would have been more complicated because documents provided to counsel by a client are only privileged if they would have been privileged in the hands of the client. As the Supreme Court has explained in the context of the attorney-client privilege: "[the privilege] protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege. This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice." <u>Fisher v. United States</u>, 425 U.S. 391, 403-04 (1976) (internal citations omitted).

applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5).  Compliance with this rule is commonly achieved by providing the requesting party with a privilege log.  If, however, an objection is made and that objection has not been ruled on, then the objected to documents are not yet "otherwise discoverable" within the meaning on Rule 26(b)(5).  As this circuit has explained:

> "[I]f a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections." *Philip Morris*, 314 F.3d at 621.  On the other hand, if the court determines that the objection does not cover the allegedly privileged document, or that the objection was not made in good faith as Rule 26(g) requires (Fed.R.Civ.P. 26(g)), the court may then decide whether the party should be deemed to have waived the privilege.  Waiver is not automatic, particularly if the party reasonably believed that its objections applied to the document.

United States v. Philip Morris Inc., 347 F.3d 951, 954 (D.C. Cir. 2003).

Defendants argue that they had no obligation to list the documents on their privilege log because the Court had not yet ruled on its responsiveness objection. Defs. Opp'n at 24 n.11.  It should go without saying that there is no obligation to assert a privilege for documents that are not within the scope of a request or that are outside of the scope of what could permissibly be requested.  Because there is no evidence that defendants believed anything other than that their objection was justified, defendants were not required to assert any privilege for the documents gathered by counsel to cross-examine and impeach Rider until after their objection was ruled on.  Similarly, defendants were not obligated to list the documents on any privilege log.  Accordingly, I cannot find that defendants waived work product protection.

Now that I have overruled defendants' objection, the issue of whether they should be

required to list the documents on a privilege log is ripe.  Defendants argue that they should not be required to list the documents because it would disclose their attorneys' mental processes, as well as their attorneys' avenues and means of investigation. Defs. Opp'n at 23.  I agree with defendants.  But more importantly, I note that defendants have already provided plaintiffs with enough information to enable them to assess the applicability of the privilege.  Specifically, defendants have repeatedly explained that their attorneys gathered publicly available documents about Rider in the course of this litigation, which they assert were not previously in the possession of defendants, for the purpose of cross-examining and impeaching him.  I do not see how additional information would better enable plaintiffs to evaluate the applicability of work product protection to the documents at issue.  Moreover, plaintiffs have not argued that the documents are not work product or that they have a sufficient need for the documents so as to overcome the documents' work product protection.  Accordingly, I will not order the Rider documents gathered by defendants' counsel for the purpose of cross-examination and impeachment produced or included on a privilege log.

Finally, plaintiffs believe that defendants have not produced all of Rider's employment related documents.  For example, they assert that defendants should have produced "narratives" relating to disciplinary warnings and a "background check." Jt. Status Report at 5.  Defendants state that they have produced all available documents relating to Rider's employment. Id.  There is no evidence before me to that defendants' representation is false.  Accordingly, there is nothing for me to order produced.

   **B.**  **Profitability, Public Relations, and Advertising Documents**

Plaintiffs requested documents relating to the profitability of defendants' circus, the

profitability of a non-party corporate affiliate's concession sales, defendants' public relations efforts, and defendants' advertising. Jt. Status Report at 6.  Defendants object to these requests on the ground that they seek irrelevant information. Id.  Plaintiffs argue that profitability, public relations, and advertising information is relevant because (1) it will show whether defendants are engaged in "commercial activity" within the meaning of the ESA, and (2) the profitability of using Asian elephants could attack defendants' witnesses' credibility by evidencing a desire to avoid any restrictions on the use of the elephants. Mot. to Compel at 37-38.  Defendants respond by arguing that profitability, public relations, and advertising information is totally irrelevant to the question of whether defendants are engaged in "commercial activity" with the meaning of the ESA and that plaintiffs need no more than defendants' admission that the circus is a for-profit enterprise to assert their bias argument. Defs. Opp'n at 10.

The ESA uses the term "commercial activity" in two relevant places.  First, the ESA makes it unlawful to "deliver, receive, carry, transport, or ship, in interstate commerce, by any means whatsoever and in the course of a *commercial activity*, any [endangered] species." 16 U.S.C. § 1538(a)(1)(E) (emphasis added).  Second, the ESA contains an exception for endangered species held in captivity or a controlled environment before December 28, 1973, provided, however, "[t]hat such holding and any subsequent holding or use of the fish or wildlife was not in the course of a *commercial activity*." 16 U.S.C. § 1538(b)(1) (emphasis added).  The ESA defines "commercial activity" as "all activities of industry and trade, including, but not limited to, the buying or selling of commodities and activities conducted for the purposes of facilitating such buying and selling." 16 U.S.C. § 1532(2).  In promulgating regulations under the ESA, the United States Fish and Wildlife Service has defined "[i]ndustry or trade in the definition

of 'commercial activity'" as "the actual or intended transfer of wildlife or plants from one person to another person in the pursuit of gain or profit." 50 C.F.R. § 17.3.  This court has found that the Fish and Wildlife Service's interpretation of "commercial activity" is not unreasonable, accords with the legislative history of the ESA, and has been impliedly ratified by Congress through subsequent amendments to the ESA leaving the definition of "commercial activity" unchanged.  Humane Soc'y of the United States v. Babbitt, 46 F.3d 93, 96 (D.C. Cir. 1995) (explaining the district court's application of the ESA's "commercial activity" requirement and vacating the district court's judgment on other grounds).

In determining whether defendants used Asian elephants in "commercial activity" as used in the ESA, the only relevant evidence is evidence that tends to prove or disprove that they engaged in the actual or intended transfer of Asian elephants from one person to another person in the pursuit of gain or profit.  Profitability, public relations, and advertising documents would provide no insight into that determination.  As plaintiffs have admitted, they are looking for documents about "the commercial aspects of [defendants'] *exhibition* of endangered Asian elephants." Mot. to Compel at 37 (emphasis added).  The commercial aspects of defendants' *exhibition* of the elephants is simply not relevant to whether defendants were engaged in "commercial activity" within the meaning of the ESA.

Plaintiffs also argue that profitability documents are needed to show the extent to which defendants rely on Asian elephants for the circus's profitability and the lengths to which they will go to protect that enterprise. Reply in Support of Plaintiffs' Motion to Compel Defendants' Compliance with Plaintiffs' Discovery Requests ("Pls. Reply Br.") at 20.  Plaintiffs brought this lawsuit, under the ESA, challenging defendants' treatment of Asian elephants.  The profitability

of the circus and its concession vendor has little, if any, relation to whether defendants' treatment of the elephants violates the statute. The fact that defendants' financial information may have some value regarding defendants' witnesses' credibility is of marginal utility and is too far out of proportion to the sensitivity of the financial information sought and the burden that would be placed on defendants in gathering and producing such documents. Moreover, defendants have freely admitted that they are engaged in a for-profit business – that should be sufficient for plaintiffs' asserted purposes.

For the foregoing reasons, I will not order defendants to produce profitability, public relations, or advertising documents.

### C. Information from 1994 and 1995

Throughout their discovery requests, plaintiffs' requested information and documents dating back to 1994. Plaintiffs thought, in light of their allegations that defendants have engaged in a pattern and practice of activities that violate the ESA, that it would be reasonable to request information for the ten year period prior to the service of their discovery requests, which were served on November 25, 2003. Pls. Reply Br. at 21-22. Despite plaintiffs' requests for information and documents dating back to 1994, defendants produced no documents or information from 1994 or 1995, uniformly limiting their discovery responses to 1996 onward. Accordingly, plaintiffs have moved the Court to order defendants to respond fully to their discovery requests by providing information and documents from 1994 and 1995. Mot to Compel at 42. In response, defendants argue that gathering documents and information becomes increasingly more difficult the farther back the search goes and that the value of information from 1994 and 1995 is insignificant in comparison to the burden of obtaining it. Defs. Opp'n at 18-19.

Defendants have the burden to show why the requested discovery would be unduly burdensome. See Alexander v. FBI, 194 FRD 299, 302 (D.D.C. 2000). It seems reasonable for plaintiffs to have requested information for a ten year period and defendants have failed to proffer an explanation why they should be permitted to uniformly cut-off discovery at 1996. While it may be true that obtaining information and documents from 1994 and 1995 would be unduly burdensome for particular requests, it does not follow that defendants can refuse to produce such information and documents from 1994 to 1995 *for all requests*. Moreover, despite the burden defendants allege in obtaining information and documents dating back that far, defendants never moved the Court for a protective order before they unilaterally set the cut off date they did. Accordingly, I find that defendants have failed to meet their burden and will order them to supplement their discovery responses with documents from 1994 and 1995.

D.   **Information in Counsel's Possession**

Defendants made a general objection to plaintiffs' definition of "Ringling" to include defendants' contractors, agents, attorneys, and consultants. Jt. Status Report at 7. Defendants have informed plaintiffs that they have "'not produced or identified information gathered by [Covington & Burling] in [that firm's] capacity as trial counsel for use in this case' . . . that 'any definition that seeks to extend plaintiffs' discovery requests to documents or information gathered by trial counsel is overbroad' and that [they are] not obligated to list all such documents individually in a privilege log under FRCP 26(b)(5)." Id. Plaintiffs argue that defendants improperly withheld such documents because they "are plainly within the 'control' of defendants, within the meaning of Rule 34." Id.

As previously explained, because defendants have the ready ability and legal right to

access documents generated and collected by their attorneys in the course of this litigation, such documents are within defendants' control for Rule 34 purposes. Accordingly, defendants cannot object to the production of documents assembled by their counsel on the ground that they are not in defendants' control. As I also explained, defendants were not required to assert any privilege for documents that would fall within the scope of their objection until after their objection was ruled on, nor were they obligated to list any assertedly privileged documents on any privilege log. However, now that I have overruled defendants' general objection to plaintiffs' definition of "Ringling," defendants must either produce the responsive documents or assert a privilege. If they assert a privilege, they must comply with the requirements of Rule 26(b)(5) of the Federal Rules of Civil Procedure.

### III.     CONCLUSION

For the foregoing reasons, the remaining issues in plaintiffs' motion to compel, as stated in the parties' September 23, 2005 joint status report, will be granted in part and denied in part.

_____
JOHN M. FACCIOLA
UNITED STATED MAGISTRATE JUDGE

Dated: