**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                                )
AMERICAN SOCIETY FOR THE        )
PREVENTION OF CRUELTY           )
TO ANIMALS, et al.,             )
                                )
          Plaintiffs,           )
                                )
     v.                         )    Civ. Action No. 03-2006 (EGS)
                                )
RINGLING BROTHERS AND BARNUM    )
& BAILEY CIRCUS, et al.,        )
                                )
          Defendants.           )
_____)
```

<u>**MEMORANDUM OPINION**</u>

Pending before the Court is defendant Feld Enterntainment, Inc.'s ("FEI") Motion for Leave to Amend Answers to Assert Additional Defense and Counterclaim.  Upon consideration of the motion, response and reply thereto, applicable law, and the entire record, the Court **denies** defendant's motion.

**I.   BACKGROUND**

On February 28, 2007, three and a half years after filing their original answer in this case and almost seven years after the central issues in this case were first brought to the Court's attention in a companion case, *see ASPCA v. Ringling Bros. and Barnum and Bailey Circus*, No. 00-1641, defendant filed a motion for leave to amend its answers to assert an additional defense and a counterclaim.

Defendant seeks to amend its answer to plaintiffs' complaint and answer to plaintiff Animal Protection Institute's ("API") supplemental complaint in order to (1) assert the affirmative defense of unclean hands; and (2) assert a counterclaim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Virginia Conspiracy Act, Va. Code Ann. § 18.2-499-500, against the current plaintiffs.  Defendant also seeks to add the Wildlife Advocacy Project ("WAP") as a party to its counterclaim pursuant to Federal Rule of Civil Procedure 13(h).

## II.  ANALYSIS

### A.    Standard of Review

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, once a responsive pleading has been served, "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice requires."  Fed. R. Civ. P. 15(a).  The grant or denial of leave to amend is committed to the discretion of the district court.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  It is an abuse of discretion, however, to deny leave to amend without sufficient reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"The most important factor the Court must consider when deciding whether to grant a motion for leave to amend is the possibility of prejudice to the opposing party." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (citing Wright, Miller, & Kane, *Federal Practice and Procedure*, § 1487 (2d ed. 1990)).  The Court may deem prejudicial an amendment that "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation."  *Id*. (citing Wright, Miller, & Kane § 1487).  The Court may also deny leave to amend where the non-moving party would be put to the additional expense and burden of a more lengthy and complicated trial or where the issues raised by the amendment are remote to the issues in the case.  *Id*.  Moreover, even though delay alone is an insufficient basis to deny a motion to amend if there is no prejudice to the opposing party, the length of delay between the last pleading and the amendment sought is a factor in considering bad faith or dilatory motive.  *Id*.

**B.  RICO Counterclaim**

Defendant's RICO counterclaim is based on an alleged elaborate scheme by the organizational plaintiffs and Tom Rider to ban Asian elephants from circuses and defraud FEI of money and

property.  The scheme involves paying Tom Rider for his participation as a key fact witness in this lawsuit, paying Tom Rider for his testimony as a legislative witness, false discovery responses and cover-ups amounting to an obstruction of justice, mail fraud, and wire fraud.  Defendant alleges that its counterclaim is based on evidence it has obtained through discovery in the Endangered Species Act ("ESA") action.  Defendant further alleges that this scheme has been going on since at least May 2001 but that defendant was not fully aware of the extent, mechanics, and purposes of the scheme until at least June 2006.

In this case, the Court finds that defendant's request to amend its answers to add a RICO counterclaim is made with a dilatory motive, would result in undue delay, and would prejudice the opposing party.  Discovery in this case has been going on for more than three and a half years and defendant has already filed a motion for summary judgment.  Although the Court did not resolve the motion for summary judgment prior to defendant's motion to amend, the motion for summary judgment has now been decided and the issues in this case have been narrowed.  Very limited discovery remains only as a result of the parties' failure to be able to resolve discovery disputes without intervention of the Court.  Defendant now seeks to inject a claim involving an elaborate corruption scheme into a case that is

winding down.  Moreover, fact discovery in this case was
originally scheduled to close on December 20, 2004 and expert
discovery was set to close on March 4, 2005.  *See* Stipulated Pre-
trial Schedule (Dec. 5, 2003); Consent Motion to Amend Pre-trial
Schedule (Sept. 7, 2004); Order (Sept. 8, 2004) (granting consent
motion).  As a result of defendant's failure to timely produce
thousands of pages of veterinary records, the Court allowed
discovery to continue in this case.  The case is now in a posture
where discovery can soon be closed and the case can be set for
trial on the "taking" claim.

The focus of the only claim in this case is whether or not
defendant's treatment of its elephants constitutes a taking
within the meaning of Section 9 of the ESA.  Any limited
information about payments to or the behavior of Tom Rider that
defendant is entitled to in order to challenge to credibility of
<u>one</u> plaintiff in this case is far different from the vast amount
of information they would be seeking under the guise of
attempting to prove an alleged RICO scheme.  Allowing defendant
to assert a RICO counterclaim at this time would not only
dramatically change the nature of the litigation but would also
result in significant additional expenses to plaintiffs in
pursuing their ESA claim.  Given that defendant's proposed RICO
claim involves all the plaintiffs, their counsel, and a non-
party, alleges a number of predicate criminal acts, and alleges

an elaborate scheme, including cover-ups, the Court rejects
defendant's argument that any additional discovery would not be
unduly burdensome to plaintiffs.  The far-reaching nature of
defendant's RICO claim would likely require substantial
additional evidence – including, at a minimum, numerous
additional documents and depositions – beyond the evidence
already produced on payments to Tom Rider, as defendant's alleged
scheme is not limited simply to these payments.  As no discovery
in this case over the last three and a half years has been
"pointed and efficient," there is no reason for the Court to find
that discovery on the RICO claim would be anything but burdensome
and lengthy.  Moreover, such discovery would sidetrack this
litigation away from the remaining, narrowed "taking" claim that
is the central focus of this litigation.  Plaintiffs would be
required to devote substantial resources to defending against a
RICO claim rather than bringing their "taking" claim to trial.

In addition, defendant seeks as part of its counterclaim to
add WAP as a party.  Defendant alleges that WAP is the alter ego
of plaintiffs' counsel and that improper payments to Tom Rider
have been funneled through WAP.  Allowing a counterclaim to go
forward that alleges plaintiffs' counsel's involvement in
improper payments would likely involve depositions of plaintiffs'
counsel and create a need for new counsel to pursue the "taking"
claim where no need currently exists.  Such a turn in the

litigation would also be highly prejudicial to plaintiffs in pursuit of their ESA claim.

Finally, the Court cannot ignore the fact that defendant has been aware that plaintiff Tom Rider has been receiving payments from the plaintiff organizations for more than two years. Although defendant alleges an "elaborate cover-up" that prevented it from becoming "fully aware of the extent, mechanics, and purpose of the payment scheme until at least June 30, 2006," Def.'s Mot. to Amend at 4, such a statement ignores the evidence in this case that was available to defendant before June 30, 2006 and does not excuse defendant's delay from June 30 forward. Plaintiffs' counsel admitted in open court on September 16, 2005 that the plaintiff organizations provided grants to Tom Rider to "speak out about what really happened" when he worked at the circus. *See* Hearing Tr. (Sept. 16, 2005). Defendant, however, waited a year and a half after that hearing to file its counterclaim. Even after allegedly becoming aware for the first time in June 2006 of the amount of payments received by Rider through WAP, defendant waited an additional eight months to file its motion to amend and such motion was filed only <u>after</u> defendant's motion for summary judgment, which it claimed would end the litigation on the ESA claims in the case.

Aside from the delay, given the inherent complexity of a RICO claim generally, and the RICO claim proposed in this case in

particular, the Court finds that allowing defendant to amend its
answers to assert a claim of such breadth would "unleash a Hydra
that would require from the court nothing short of a herculean
effort in time and attention to even maintain a semblance of
control over it." *Koch v. Koch Industries, Inc.*, 127 F.R.D. 206,
212 (D. Kan. 1989).  Through its numerous discovery-related
motions, defendant has shown that its efforts to obtain
information to impugn plaintiff Tom Rider and learn every detail
of the media and litigation strategies of its opponents are
relentless.  The Court will not allow a proposed counterclaim to
be used as a tool to indefinitely prolong this litigation on a
very narrow issue – whether or not defendant's treatment of its
elephants constitutes a taking under the ESA.  For this and all
of the above stated reasons, the Court **denies** defendant's motion
to amend its answers to assert a RICO counterclaim.

### C.    Unclean Hands Defense

Defendant also now seeks to amend its answer to assert the
doctrine of unclean hands as a defense.  Defendant alleges that
an amendment asserting this defense would conform the pleadings
to the evidence in the case.  For the same reasons of undue delay
and dilatory motive that the Court denies defendant's motion for
leave to amend to assert a RICO counterclaim, the Court denies
defendant's motion to amend to assert the unclean hands defense.
Defendant was aware of the payments to Tom Rider that underlie

its defense of unclean hands at least as early as 2005. Defendant decided to delay asserting this defense until three and a half years into the litigation, at least three years of discovery, and a year and a half after learning of plaintiffs' alleged payments to Tom Rider, and only after discovery appeared as though it was winding down and defendant had filed what it considered a dispositive motion.  Such delay provides strong evidence of a dilatory motive aimed at prolonging the ultimate disposition of the one issue in this case – whether or not defendant's treatment of its elephants constitutes a "taking" under the ESA.

Moreover, the unclean hands defense is not a proper defense in a citizen suit seeking an injunction to prevent a "take" under Section 9 of the ESA.  The Court finds the reasoning for barring the unclean hands defense in other cases involving statutes with citizen suit provisions allowing private citizens to bring suits that are in the public interest to be equally applicable to this case.  *See Chrysler Corp. v. General Motors Corp.*, 596 F. Supp. 416, 418-20 (D.D.C. 1984) (barring unclean hands defense raised in answer to suit under Clayton Act and Sherman Antitrust Act); *United States v. Am. Elec. Power Serv. Corp.*, 218 F. Supp. 2d 931, 938 (S.D. Ohio 2002) (concluding that the "defense of unclean hands is inappropriate as applied to public citizens who

are authorized to bring suit under the [Clean Air Act] by

Congress").

The Supreme Court's reasons for not allowing an unclean

hands or *in pari delicto* defense where private parties were

seeking treble damages under the Clayton Act and the Sherman

Antitrust Act, *see Kiefer-Stewart Co. v. Joseph E. Seagram &*

*Sons, Inc.*, 340 U.S. 211 (1951); *Perma Life Mufflers, Inc. v.*

*Int'l Parts Corp.*, 392 U.S. 134 (1968), has been applied by

courts disallowing such a defense in antitrust actions seeking

injunctive relief, *see*, *e.g.*, *Chrysler Corp.*, 596 F. Supp. at

419-20 (citing cases), and applies with equal force to citizen

suits seeking injunctive relief under the ESA.  Under both the

ESA and the antitrust laws, private citizens function as "private

attorneys general" representing the public interest.  *See id*. at

419 ("Private parties filing suit under the antitrust laws

function as 'private attorneys general' representing the public

interest."); *Bennett v. Spear*, 520 U.S. 154, 165 (1997)

(indicating that the "obvious purpose" of the ESA citizen suit

provision "is to encourage enforcement by so-called 'private

attorneys general'").  In explaining why unclean hands and *in*

*pari delicto* defenses were barred in antitrust actions brought by

private citizens, the Supreme Court reasoned:

> The purposes of the antitrust laws are best served by
> insuring that the private action will be an
> ever-present threat to deter anyone contemplating
> business behavior in violation of the antitrust laws.

> The plaintiff who reaps the reward of treble damages
> may be no less morally reprehensible than the
> defendant, but the law encourages his suit to further
> the overriding public policy in favor of competition.
> A more fastidious regard for the relative moral worth
> of the parties could only result in seriously
> undermining the usefulness of the private action as a
> bulwark of antitrust enforcement.

*Perma Life Mufflers, Inc.*, 392 U.S. at 139.  Likewise, the

purposes of the Endangered Species Act – to protect endangered

and threatened species – are best served by insuring that a

private right of action by citizens promoting the public interest

in the preservation of such species will remain an ever-present

threat to those seeking to unlawfully harm such species.  The

Court refuses to weigh the "relative moral worth" of Tom Rider

and the plaintiff organizations versus FEI because the law

encourages citizen suits under the ESA to further the overriding

public policy in favor of protecting the animals from unlawful

harassment or harm that constitutes an impermissible "take" under

Section 9 of the ESA.  Allowing the unclean hands defense to be

asserted in this context would seriously undermine the usefulness

of the citizen suit provision.  For all of the above reasons, the

Court **denies** defendant's motion to amend it answers to assert an

unclean hands defense.

   D.   **Motion to Strike WAP's Response**

   FEI has also filed a Motion for Expedited Ruling to Strike

Non-Party WAP's Response to FEI's Motion for Leave to Amend Due

to Untimeliness and Lack of Standing.  Because WAP is not a party

to this case nor has it sought leave to intervene and the Court

therefore did not consider its response, the Court **grants** FEI's

motion to strike WAP's response to the motion.

## III. CONCLUSION

For the foregoing reasons, the Court **denies** defendant's

Motion for Leave to Amend Answers to Assert Additional Defense

and Counterclaim and **grants** defendant's Motion for Expedited

Ruling to Strike Non-Party WAP's Response to FEI's Motion for

Leave to Amend Due to Untimeliness and Lack of Standing.


**Signed:**    **Emmet G. Sullivan**
               **United States District Judge**
               **August 23, 2007**