UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS *et al.*,<br><br>      Plaintiffs,<br><br>      v.<br><br>RINGLING BROTHERS AND BARNUM & BAILEY CIRCUS *et al.*,<br><br>      Defendants. | Civil Action No. 03-2006 (EGS/JMF) |

**MEMORANDUM OPINION**

Currently pending and ready for resolution is <u>Plaintiffs' Motion to Compel Discovery from Defendant and Supporting Memorandum of Law</u> (#250).

**The Master Schedule**

Plaintiffs demanded that the Circus produce documents that (1) pertained to its practices and procedures with respect to the chaining of elephants when they are not actually performing and when they are not on the train and (2) described its practices and procedures for maintaining the elephants on the train when traveling from one venue to another. <u>Response in Opposition to Plaintiffs' Motion to Compel Discovery from Defendant</u> (#263) at 2 (quoting Exhibit B to #250).

Pointing to deposition testimony that the train may not leave immediately upon the loading of the elephants, which are then chained in the railroad car, plaintiffs claim entitlement to all documents pertaining to how long the elephants may have to wait until the train departs

because they intend to prove that this kind of chaining hurts the elephants. They claim that they should have received documents called "Master Schedules."

During his deposition, James M. Andacht, the Circus's Vice President for Circus Operations, testified that the master schedule "is a compilation of a number of different information sheets." #250, Exhibit D at 2. It includes a rigging call, scheduling of rehearsals, and the "load in," when casual labor can be expected, up to show time. Id. The Circus has made available to the court a Master Schedule, and it is, as Mr. Andact described, an hour by hour schedule of events in a given day.

As is first obvious, the Master Schedule cannot possibly be described as a document pertaining to the chaining of elephants nor does it describe practices and procedures for maintaining the elephants on the train. The Circus was therefore correct in concluding that it was not obliged to produce these schedules.

Plaintiffs nevertheless insist that Andacht testified that Master Schedules "contain details about the periods of the day when the elephants are actually in chains." <u>Plaintiffs' Reply in Support of Their Motion to Compel Discovery from Defendant</u> (#269) at 2. They cite in support of this assertion their own motion (#250) at 4 and Andacht's deposition at 17. Thus, in their Motion and Reply, they portray Andacht as testifying that the Master Schedule contains details about the periods of the day when the elephants are actually in chains.

I have reviewed the portions of Andacht's deposition that are attached to the Motion and the Reply and I cannot find in them any testimony pertaining to the length of time the elephants spent on the train. In the attachment to plaintiffs' motion, Andacht testified as to the nature of the Master Schedule, while in the attachment to the Reply he spoke to the Performance Reports. In neither of these excerpts did he speak to the amount of time the elephants spent on the train.

2

Finally, in their Reply, plaintiffs portray their discovery request as demanding "all records that reflect 'the period of time Ringling permits the elephants to be kept on the train.'" #269 at 2.   Plaintiffs made no such request.  They demanded a description of Ringling's practices and procedures for maintaining the elephants on the train when traveling from one venue to another, including "the longest period of time Ringling permits the elephants to be kept on the train without being taken off the train." #263 at 3.  Plaintiffs also asked for all records "identified in response" to this interrogatory. Id. at 2.  A schedule of events certainly does not fall within this category; it does not contain or pertain to a practice or procedure.  Plaintiffs' selective quoting of their discovery demands that makes it appear that they asked for all records that reflect "the period of time Ringling permits the elephants to be kept on the train" is distressingly misleading.

## Performance Reports

In addition to the documents just described that (1) pertain to defendants' practices and procedures with respect to the chaining of elephants when they are not actually performing and when they are not on the train and that (2) describe defendants' practices and procedures for maintaining the elephants on the train when traveling from one venue to another, plaintiffs also sought the following information:

> For each of the elephants identified in response to Interrogatory No. 8, provide information regarding the Ringling employees who worked with each such elephant, including but not limited to, identifying the persons who worked with each such animal, the time period of such work, and each such person's responsibilities with respect to the animal, and identifying all veterinarians who treated or cared for each such animal.  Identify all documents and records that in any way relate to the information requested by this Interrogatory.

#250, Exhibit B, Request No. 17.

Plaintiffs claim that they are entitled to Performance Reports under this demand and the demands for production and interrogatories quoted above.

A Performance Report is attached to plaintiffs' motion as Exhibit H.  The Report indicates the times of the shows, the location, and the date.  Two circus officials, Mr. Andacht and Mr. Feld so testified, and Mr. Andacht explained, the Performance Report is also a critique of the show. #263 at 7-8 (quoting Exhibit 1, thereto, at 122-24 and #250, Exhibit G at 84-88). Accordingly, the Performance Report that I have seen indicates, for example, that particular performers did not perform, that some equipment broke, and that there was no high wire (which must have made the high wire act a tremendous feat of imagination).

As is again obvious, such reports do not contain information about the practices and procedures pertaining to the chaining of elephants or their maintenance when they are on the train.  The Circus is correct in concluding that such reports are not responsive to the interrogatories and requests for production of documents.

### Audio Tapes

A heavily redacted document created by the Department of Agriculture was produced to plaintiffs under the Freedom of Information Act.  According to the document, certain "audio tapes" and "other materials" concerning an unnamed witness who reported to that Department that the Circus knew that some of its elephants had tuberculosis, were turned over to Fulbright & Jaworksi, the Circus's counsel.

Plaintiffs claim that the tapes are medical records that must be produced under Judge Sullivan's order that required the Circus to produce "all records that pertain to the medical condition or health status of, and all veterinary records for any and all Asian elephants that were

4

in defendant's custody or control from 1994 to the present, regardless of when such records were created." Order of Sept. 26, 2006 (#94).  Additionally, plaintiffs claim the tapes fall within their demand for "all records that concern or relate in any way to the investigation of the Circus that had been conducted by the Department of Agriculture."

These tapes have been the subject of correspondence between counsel in which the Circus has insisted that the tapes in their counsel's possession do not pertain to the health of an elephant but a human being and that, in any event, they came into existence well before the ten year cutoff period for discovery that Judge Sullivan created. #263 at 10-11.

The situation as to these tapes is, on this record, murky since I have never heard them or had a detailed explanation of their contents.  Accordingly, I will require the Circus to provide me with a copy of the tapes and a declaration from counsel that explains how counsel came to the conclusion that they were created before the discovery cut off period.

## Tom Rider

I sometimes think that it is impossible for there to be a discovery dispute in this case that does not involve Tom Rider, the former Circus employee who is expected to be plaintiffs' main witness as to their contention that the Circus elephants are abused.

The Circus insists that it has produced, as plaintiffs demanded, "all documents and records that in any way concern or relate to Tom Rider." #250 at 8 (quoting Document Request No. 5).  But, plaintiffs counter, if the Circus hired an outside consulting firm to follow or counteract Rider's efforts, the Circus would have to produce those documents and records as well.  Counsel for the Circus denies that the Circus hired such a person and refers to the testimony of Mr. Feld, of Feld Entertainment, denying that the Circus tracks Mr. Rider. #263 at 12.

Plaintiffs' speculation of what the Circus might have done, in the teeth of the denial by defendants' counsel that it has, hardly merits any additional judicial action.

An Order accompanies this Memorandum Opinion.

_____/S/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: August 11, 2008