**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANIMAL WELFARE INSTITUTE, <u>et al.</u>,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No: 03-2006 (EGS)** |
| **v.** ) | |
| ) | |
| **FELD ENTERTAINMENT, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**JOINT STATUS REPORT**

In accordance with the Court's March 29, 2013 Memorandum Opinion and Order in the above-captioned action (the "ESA Action"), Plaintiffs the Animal Welfare Institute, The Fund for Animals, Inc., Born Free USA and Tom Rider, and Katherine Meyer and Meyer, Glitzenstein & Crystal (collectively, "Plaintiffs and ESA Counsel") and Defendant Feld Entertainment, Inc. ("Feld") (all collectively, the "Parties"), by and through their undersigned counsel of record, respectfully submit this Joint Status Report.

In its March 29, 2013 Order, the Court instructed the Parties to submit a Joint Status Report that includes a recommendation for further proceedings by April 15, 2013. *See* Docket Entries 619-620. Counsel for all Parties met and conferred on April 10, 2013, and determined that there was material disagreement between Feld and Plaintiffs and ESA Counsel as to how to proceed. Accordingly, each side has agreed to include in the Joint Status Report its recommendations for further proceedings.

I.     **PLAINTIFFS' AND ESA COUNSELS' REPORT**

**Introduction**

We have been advised that Feld seeks almost $23 million in attorneys' fees in this case. (Feld seeks the same attorneys' fees from Plaintiffs, ESA Counsel and others in Case No. 1:07-cv-01532 (the "RICO Action"). We are further advised that Feld seeks approximately 120 days to prepare its submission supporting purported entitlement to reasonable fees in such an amount.

Plaintiffs number amongst their group several nonprofit entities. Paying fees in this amount (or even a substantial fraction thereof) would likely bankrupt these entities. As set forth below, Plaintiffs and ESA Counsel, through their counsel, seek a deliberative process that puts the attorneys' fees issue to the Court in a fashion that will allow Plaintiffs and ESA Counsel fully and fairly to examine Feld's request, evaluate it in accordance with settled principles, and fully and fairly present all responses to which Plaintiffs and ESA Counsel are now entitled under the law. Fullness and fairness of the process is, by no exaggeration, essential to Plaintiffs' continued existence.

A. **The Anticipated Nature of Feld's Presentation**

As the Court is aware, this case has spanned at least ten years. It has been litigated contentiously. At various times, the degree of contentiousness has drawn the ire of the Court, and that ire has been directed at both sides. The universe of bills and related material that demarcates Feld's counsel's participation in this process likely runs to over a thousand pages. Roughly put, Feld has asserted through counsel that it spent an amount equal to almost $200,000 a month for 120 months litigating this matter. (That number is largely without precedent in this district in fee shifting cases. *Compare Miller v. Holzmann*, 575 F. Supp. 2d. 2, 3-4 (D.D.C. 2008), a case spanning thirteen years where the attorneys' fees were less than $10 million). Assuming that as few as ten pages of billing entries can capture $200,000 of purported monthly

effort, that alone yields 120 pages per year and 1,200 pages or so in total.  This appears to be the largest compendium of such materials ever proffered in this jurisdiction.  One measure of the burden in going through this is the fact that Feld requests 120 days to prepare its submission.

### B.  <u>The Nature of Plaintiffs' Review of the Material It Receives</u>

Once Plaintiffs and ESA Counsel receive the materials Feld is preparing (and presumably has been preparing) some 120 days hence, we must direct themselves to a bevy of factors and circumstances dealing with the reasonableness of this massive claim.  These are well articulated by this Court in *Heller v. District of Columbia*, 832 F. Supp. 2d 32 (D.D.C. 2011) and by Chief Judge Lamberth in *Miller*, 575 F. Supp. at 11-44.  We do not reiterate them in full here, except to point out that the inquiry is wide-ranging.  In addition to addressing hourly rate issues, we must evaluate issues regarding: non-compensable tasks reflected on the bills;[1] the adequacy of time entries (including vague timekeeping records or block billing);[2] unnecessary work;[3] inefficiencies (including the number of lawyers for tasks, aggregate hours allocated to tasks, and billing levels for certain tasks);[4] whether current versus historical rates should apply (overall or regarding to particular parts of the case);[5] and a host of other matters typically considered.

There are further issues created by our anticipated need for some level of limited discovery,[6] particularly where ambiguities may arise involving time allocations that cannot easily be addressed by facial analysis of the bills.  Feld's stated view that all discovery should be

---

[1]  *Id.* at 22-34; *see also Copeland v. Marshall*, 641 F.2d 880, 891-92 (D.C. Cir. 1980) (discussing separability of non-prevailing claims).

[2]  *Id.* at 34-38; *Cobell v. Norton*, 407 F. Supp. 2d 140, 158 (D.D.C. 2005); *see also In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989) (evaluating vague time entries and block billing).

[3]  *Id.* at 38-39; *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp.354, 369 (D.D.C. 1983).

[4]  *Id.* at 39-44; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) ("redundant" billings to be excised from fee award).

[5]  *Id.* at 18-21.

[6]  *See Ideal Electronic Sec. Co., Inc. v. International Fidelity Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997) (aside from billing entries themselves, discovery of other communications going to reasonableness of the amount of the fee award appropriate).

denied from the outset is contrary to the law and is also unfair and prejudicial. Plaintiffs do not know the discovery they need and will not know this until they have had an opportunity to review the substance and adequacy of Feld's fee petition and supporting materials. And indeed there may be privilege issues as well. As the final backdrop, as we have advised above, the magnitude of the fee request is life-threatening to the Parties from whom the fees are sought.

C. **The Process Going Forward**

1. **Assignment to Magistrate Judge Facciola**. We propose referring the matter to Judge Facciola, who is already superintending discovery in the RICO Action, including RICO damages. The RICO damages are precisely the same as these legal fees. Feld made a choice and has clearly asserted that it seeks in the RICO case only return of its legal fees, and Judge Facciola will oversee the discovery and ancillary analysis of this issue. It strikes us as inefficient to have two judicial officers, this Court and Judge Facciola, both engaged in the same general undertaking involving more than 1,000 pages of bills and the ancillary discovery that may be appropriate in determining their meaning and, at least in some degree, what is reasonable.[7] Indeed, we have no objection if the Court were to refer the matter to Judge Facciola not only to oversee discovery matters but also to recommend to the Court those fees that were reasonable and compensable and those that were not. The final decision, of course, remains for the Court. But the Court is plainly entitled to seek the input and analysis of a judicial officer as experienced as Judge Facciola, who is generally familiar with the case, in making the Court's final decision.

2. **Time for Filing**. In terms of timing, Feld wishes **120 days** after the entry of a court-ordered schedule. If that is granted, Plaintiffs and ESA Counsel request **180 days** within

---

[7] The suggestion that Plaintiffs are somehow judicially estopped now in 2013 from suggesting this process to avoid a duplication of judicial efforts on the same topic is without merit. This proposal does not relate to the Court's previous determination in 2007 that Feld had improperly sought leave to amend its answer and file a counterclaim and that Feld had acted "with a dilatory motive, [that] would result in undue delay, and [that] would prejudice the opposing party. *See August 23, 2007 Order (DE 176))*.

which to respond and to perform the tasks described above (evaluating voluminous materials, submitting them to an expert or experts, some limited discovery, now hard to forecast until we have seen Feld's materials, and resolving other issues).  We propose that Feld then may have **45 days** to reply.  We ask the Court to be mindful of the fact that we will be starting from scratch in terms of the evaluation we must bring to this massive universe after Feld has likely had a minimum of four months and practically had many months more.[8]

3. **Separate Pleadings from the Plaintiffs**.  Plaintiffs and ESA Counsel have varying positions and should have the ability to file separate pleadings and submit evidence on their own behalf as appropriate.  Each may need to speak to separate circumstances, financial status, and other equitable factors that militate in favor of mitigation of any fee award.[9]  We reasonably anticipate that presentation of such matters may not be expressed adequately in a joint pleading and thus require the ability each to file a separate pleading and submit evidence as deemed appropriate on an individualized basis in response to Feld's claimed fees.[10]

---

[8]  It would be helpful under this schedule if the Court were to require Feld at least to provide us his raw bills well prior to the end of the 120 days he requests for preparation of his written submission.

[9]  Under *Christiansburg,* courts routinely follow an equitable standard under which plaintiffs' financial condition among other equitable factors is considered when determining the amount of fees awarded to prevailing defendants. *See, e.g., Thompson v. Sawyer,* 586 F. Supp. 635, 643 n.5 (D.D.C. 1984) (*rev'd* on other grounds) (recognizing that courts consider "the relative financial positions of litigants in assessing attorneys' fees against a plaintiff"); *Wolfe v. Perry*, 412 F.3d 707, 723-24 (6th Cir. 2005) (while financial condition not proper factor in determining whether to award fees, it may be considered when determining amount); *Gibbs v. Clements Food Co.*, 949 F.2d 344 (10th Cir. 1991) (same).

[10]  There quite obviously will also come a time where the Court and the Parties must address the effect of the $9.3 million payment made by the ASPCA to Feld and the settlement it involved on the legal fees that may be awarded to Feld.  We assume that issues regarding this inquiry, which involve some level of discovery, are beyond the scope of the Report that the Court wishes from the Parties now.  We do, however, wish to be clear that because our understanding of the settlement is that it covers in part attorneys' fees, Plaintiffs are entitled to inquire about the circumstances of that coverage through appropriate discovery.  Clearly, Feld is not entitled to a double recovery of its attorneys' fees, where they are paid in whole or part already.  Unless so directed by the Court, we leave for a later time our proposals as to how such discovery can be accomplished.

## II.      DEFENDANT FELD ENTERTAINMENT, INC.'S POSITION

Defendant Feld Entertainment, Inc. ("FEI") proposes the following briefing schedule on the amount of attorneys' fees: (1) FEI's submission shall be due no later than **120 days** after the entry of a Court-ordered briefing schedule; (2) Plaintiffs' consolidated response/opposition shall be due no later than **90 days** after FEI's submission; (3) FEI's reply shall be due no later than **45 days** after Plaintiffs' consolidated response/opposition.   The time sought by FEI is necessary because the parties agreed to bifurcate this matter into (1) entitlement and (2) amount.   The vast majority of the work by FEI on amount has yet to be performed, including final review of billing records, which makes Plaintiffs' suggestion of a 1,200-page submission hypothetical, and their suggestion of an advance disclosure of "raw bills" impractical.   The submission necessarily will be significant, but the alleged "burden" that Plaintiffs complain of is one of their own making. *See* 3/29/13 Mem. Opp. (DE 620) at 3 ("this case was groundless and unreasonable from its inception").

FEI proposes that the amount claimed for the sanction against Katherine Meyer and Meyer Glitzenstein & Crystal ("MGC") be included within FEI's submission concerning the Plaintiffs, on the same schedule.   Should Ms. Meyer and MGC be allowed a separate brief responding to the requested sanction, FEI requests that it be afforded a separate reply brief equal to the amount of pages allotted to Ms. Meyer and MGC.

Plaintiffs' suggestion for further separate briefs of their own *in addition to* a consolidated opposition is not justified and was not raised at the meet-and-confer.   This should not be allowed at all and certainly not without FEI receiving a reply equal to the total number of extra pages submitted by Plaintiffs.

FEI believes that confirming the Humane Society of the United States ("HSUS")'s party status is appropriately done in connection with the forthcoming determination of the attorneys' fees amount and will file a motion at the appropriate time.[11]

FEI does not believe that the Court desired a brief at this point.   However, as to the remainder of Plaintiffs' arguments, *supra*, and in the meet-and-confer, FEI observes as follows:

- Discovery on FEI's attorneys' fee submission is unnecessary, inappropriate and a waste of time and judicial and party resources. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("a request for attorneys' fees should not result in a second major litigation"); *Nat'l Ass'n of Concerned Veterans v. Dep't of Commerce*, 675 F.2d 1319, 1329-30 (D.C. Cir. 1982) ("unfocused requests to initiate [fee] discovery without indicating its nature or extent serve no purpose"); *Springs v. Thomas*, 709 F. Supp. 253, 254 (D.D.C. 1989) (discovery unnecessary where fees documented in affidavits and contemporaneous time records). This is particularly true given that the main thing Plaintiffs said they "needed" discovery on is the possibility that fees for unrelated cases have inflated the claim for attorneys' fees here (an assertion that is untrue).  The analysis of "inefficiencies" and other issues in determining "reasonableness" of a claimed fee is based on the claimant's submission, not discovery from the claimant.  *E.g.*, *Miller v. Holzmann*, 575 F. Supp. 2d 2, 3, 34-44 (D.D.C. 2008) (mis-cited by Plaintiffs:  relator, co-plaintiff with United States in 13-year False Claims Act case, sought "another $20 million in attorneys' fees and costs;" FEI, seeking a comparable amount, defended this case by itself).  *Ideal Electronic Sec. Co. v. International Fidelity Ins. Co.*, 129 F.3d 143, 152 (D.C. Cir. 1997), cited by Plaintiffs,

---

[11]      The Court denied without prejudice FEI's request to hold HSUS jointly and severally liable for all attorneys' fees and permitted FEI to file a motion addressing this issue at a later time.  3/29/13 Mem. Op. (DE 620) at 49.  FEI has contacted HSUS regarding this and invited HSUS to participate in both the meet-and-confer and this status report.  HSUS declined.  FEI will hold a separate meet-and-confer with HSUS on this issue pursuant to Local Rule 7(m) prior to filing its motion on this matter.

was not, and has not been applied subsequently in, federal, statutory fee-shifting situations and is not relevant to the point cited by plaintiffs. *See id.* at 152 (determination to be based on billing statements; no reference made to discovery).

- Any discovery that is allowed on fees will be mutual and paid for by Plaintiffs, which are further reasons to deny it to begin with. *Sierra Club v. EPA*, 769 F.2d 796, 811 (D.C. Cir. 1985); *New York v. Microsoft Corp.*, 2003 U.S. Dist. LEXIS 8713, at *9 (D.D.C. May 12, 2003).

- Folding FEI's fee request into the RICO case is contrary to the very separation of these matters that the Court ordered six years ago at Plaintiffs' urging and with knowledge that FEI's RICO case actual damages would largely be FEI's ESA case legal fees. *ASPCA v. Feld Ent., Inc.*, 244 F.R.D. 49, 51-52 (D.D.C. 2007). Plaintiffs present no valid reason for reversing course and would be judicially estopped from doing so. *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010). The standards for awarding attorneys' fees in this case by the Court and for assessing damages in the RICO case by the jury, as well as the respective allowable scopes of discovery, are entirely different, and Plaintiffs cite nothing to the contrary. Plaintiffs' suggestion that the Magistrate Judge determine the fee amount in the first instance was not raised in the meet-and-confer and would expand, not conserve, required judicial time. Any ruling of the Magistrate Judge would be appealed to the District Judge. Moreover, the "reasonableness" of the fee sought is directly related to the vexation that FEI was forced to endure. Thus, the Judge who actually tried this case and who decided the vast majority of the motions filed (including fee entitlement), is in a superior position to determine whether the amount is reasonable. *E.g.*, *Miller*, 575 F. Supp. 2d at 16. Finally, the judicial task is not, as Plaintiffs assert, a

line-by-line review of "thousands" of pages of bills. *Donnell v. United States*, 682 F. 2d
240, 250 (D.C. Cir. 1982) (district court "cannot inquire into the reasonableness of every
action"); *Concerned Veterans*, 675 F. 2d at 1338 (Tamm, J., concurring) ("[n]either
broadly based, ill-aimed attacks, nor nit-picking claims … should be countenanced");
*Mille*r, 575 F. Supp. 2d at 21 n.33 (only "specifically challenged" entries need be
considered).  Plaintiffs' purported request for "coordination" is just more effort to delay
an already protracted case.

- Plaintiffs' assertion that recovery of even a "fraction" of the amount sought would "likely
  bankrupt" them is unsupported and contradicted by the record.  *See* DE 593-19 at 2 (2010
  net assets of Plaintiffs and HSUS combined exceed $159 million).  Moreover, Plaintiffs
  "cannot litigate tenaciously and then be heard to complain about the time necessarily
  spent by the [prevailing party] in response."  *Copeland v. Marshall*, 461 F.2d 880, 904
  (D.C. Cir. 1980) (*en banc*).  This is particularly true given the finding, *inter alia*, that
  their "lawsuit was, ***from the beginning,*** frivolous and vexatious."  3/29/13 Mem. Op.
  (DE 620) at 27 (emphasis added).

Dated: April 15, 2013

Respectfully submitted,

/s/ John M. Simpson
_____
John M. Simpson (D.C. Bar # 256412)
jsimpson@fulbright.com
Michelle C. Pardo (D.C. Bar # 456004)
mpardo@fulbright.com
Kara L. Petteway (D.C. Bar # 975541)
kpetteway@fulbright.com
Rebecca E. Bazan (D.C. Bar # 994246)
rbazan@fulbright.com

FULBRIGHT & JAWORSKI L.L.P.
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
Telephone:  (202) 662-0200
*Counsel for Feld Entertainment, Inc.*

/s/ Stephen L. Neal, Jr.
_____
Bernard J. DiMuro (D.C. Bar No. 393020)
Stephen L. Neal, Jr. (D.C. Bar No. 441405)
**DIMURO GINSBERG, P.C.**
1101 King Street, Suite 610
Alexandria, Virginia 22314
Telephone: (703) 684-4333
Facsimile:  (703) 548-3181
Emails: bdimuro@dimuro.com;
        sneal@dimuro.com
*Counsel for Plaintiff Animal Welfare*
*Institute*

/s/ Roger E. Zuckerman
_____
Roger E. Zuckerman (D.C. Bar No. 134346)
**ZUCKERMAN SPAEDER LLP**
1800 M Street, N.W., Suite 1000
Washington, DC 20036
Telephone: (202) 778-1800
Facsimile:  (202) 822-8106
Email: rzuckerman@zuckerman.com

and
/s/ Logan D. Smith
_____
Logan D. Smith (D.C. Bar No. 474314)
Alexander Smith, Ltd.
3525 Del Mar Heights Road, #766
San Diego, CA 92130
Email: logan@alexandersmithlaw.com
*Counsel for Plaintiff The Fund for Animals,*
*Inc.*

/s/ David H. Dickieson
David H. Dickieson (D.C. Bar No. 321778)
**SCHERTLER & ONORATO, LLP**
575 7th Street, N.W., Suite 300 South
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile:  (202) 628-4177
Email: ddickieson@schertlerlaw.com
*Counsel for Plaintiff Born Free USA United*
*with the Animal Protection Institute*

/s/ Matthew G. Kaiser
Matthew G. Kaiser (D.C. Bar No. 486272)
**THE KAISER LAW FIRM PLLC**
1750 K Street, N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 640-2850
Facsimile:  (202) 280-1034
Email: mkaiser@thekaiserlawfirm.com
*Counsel for Plaintiff Tom Rider*

/s/ Stephen L. Braga
Stephen L. Braga (D.C. Bar No. 366727)
Law Office of Stephen L. Braga
3079 Woods Cove Lane
Woodbridge, VA 22192
Telephone: (617) 304-7124
Email: slbraga@msn.com
*Counsel for the Law Firm of Meyer,*
*Glitzenstein & Crystal and Katherine A.*
*Meyer*